STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Ted S.           }
Gladstone and Kathleen            }
Hoisington                        }   Docket No. 190-10-99 Vtec
                                  }
                                  }

Decision and Order

Appellants appealed from a decision of the Planning Commission of the Town of Bennington granting site plan approval to a project at a shopping center known as Monument Plaza. Two related matters, involving a subdivision and variance for the project, were resolved by the merger of the two properties, and were closed in February of 2000. Appellants are represented by John D. Hansen, Esq.; Appellee-Applicant BLS Bennington LC is represented by Alan B. George, Esq.; the Town of Bennington is represented by Robert E. Woolmington, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit alone, by agreement of the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law, but did not do so on the original schedule. The Court issued its notice of decision in the summer and allowed the parties to file supplemental requests for findings as contemplated by V.R.C.P. 52. Instead, Appellants moved to vacate, or for a schedule for further memoranda. The Court apologizes for the delay in issuing the decision, due in part to the press of other cases, in part to the consideration that no parking lot construction or landscaping could occur during the winter season, and in part due to the motion to vacate, to which no response was filed. Appellant's Motion to Vacate is DENIED as there is no reason to vacate the ruling. The 'notice of decision' was properly issued; under Rule 52 the Court may provide for subsequent filing of requests for findings, as was done in this case. Appellee-Applicants proceeded at their own risk to construct during the hearings; the City did not seek to stop construction pending the proceedings in this Court. The present decision will conclude the matter.

Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellee-Applicant owns an existing shopping center known as Monument Plaza, located on Northside Drive (Route 7A) in Bennington, in the Commercial-Industrial zoning district. Appellee-Applicant seeks site plan approval under § 3.4.4 of the Zoning Bylaws for alterations and additions to the center's retail space, parking space, landscaping and to the configuration of the intersection of the shopping center's main access road with Route 7A. The existing shopping center consisted of approximately 105,000 square feet of building footprint, primarily in an L-shaped configuration, but including a small existing building within the parking lot closer to the street. The existing parking lot in front of the Wal-Mart building extends close to the street. Appellee-Applicant proposed to retain the existing Wal-Mart building of 60,966 square feet,

consisting of the 50,966 square feet in Wal-Mart itself plus an additional 10,000 square feet of existing retail space marked as " A" on the proposed site plan[1] on the east end of the Wal-Mart building. Appellee-Applicant proposed to retain the existing retail space marked as " E" on the site plan (a free-standing building of 6,480 square feet located in the parking lot and occupied by Western Auto) and proposed to demolish 37,554 square feet of retail space. Appellee-Applicant proposed to construct new retail space of 55,793 square feet for a new Price Chopper supermarket and attached new retail space marked as " B" on the site plan (consisting of 15,000 square feet) and as " C" on the site plan (consisting of 27,000 square feet), for a total of 97,793 square feet in the ' Price Chopper building.' An additional 9,900 square feet of retail space to the rear of the Price Chopper building shown within dashed lines as " future' is not part of the present application[2]. Thus, the proposal is for a 165,239 square foot shopping center, of which 67,446 square feet is in the existing Wal-Mart and Western Auto buildings, and 97,793 square feet is in the new Price Chopper building.

In conducting site plan review, the Planning Commission and hence this court may review and impose appropriate conditions and safeguards only as to the adequacy of vehicular and pedestrian traffic access onto and from the site, on-site circulation of vehicles and pedestrians, parking, landscaping, screening, lighting, and the protection of renewable energy resources. Of these issues, Appellants do not contest screening, lighting, or the protection of renewable energy resources.

The proposed site plan shows a paved area extending to both sides of and behind the Wal-Mart building, and a paved area extending to both sides of and behind the Price Chopper building, allowing vehicular traffic to drive in a truck lane to the south (left) of the Price Chopper building, to connect with a new commercial drive or service road behind the Price Chopper that would exit the property at the intersection of Harmon Road and Morse Road at the westerly side of the property. A stop sign is proposed for that intersection, as well as signage to prohibit truck traffic from turning right onto Harmon Road. Morse Road leads to Route 67A to the northwest, while Harmon Road intersects with Route 67A close to its intersection with Route 7A.

The proposed site plan shows the following numbers of parking spaces provided as calculated for each of the buildings, on the basis of one parking space for every 300 square feet of gross floor area. For the small free-standing Retail " E" (Western Auto) building of 6480 square feet, 22 spaces are required and 65 spaces are provided. For the Wal-Mart building (Wal-Mart plus Retail " A" ) of 60,966 square feet, 203 spaces are required and 235 spaces are provided. For the Price Chopper building, the site plan shows a parking space calculation to accommodate the ' future' building segment. Without that segment, 326 spaces are required; with that segment, 359 spaces are required. The proposed site plan provides 418 spaces. Accordingly, the parking proposed by the site plan is adequate. In this regard, however, we note testimony that from time to time Wal-Mart places outdoor display or storage of seasonal inventory in the parking lot. Any such uses on the 235 spaces of parking area allocated to the Wal-Mart building may not impede any more than a total of 32 of the designated parking spaces from being used for parking at any given time, as 203 spaces are required to be provided for that building. That is, even though there are also excess parking spaces provided for the Price Chopper building and for the Western Auto (Retail " E" ) building, those excess spaces cannot be allocated to compensate for Wal-Mart parking spaces used instead for outdoor display.

Further, with regard to parking, we note that the free-standing ATM was not shown in the site plans before the Planning Commission, and none of the calculations or assumptions regarding the uses in the shopping center accounted for the free-standing ATM. It was discussed only briefly in testimony at trial. An ATM is a use which may be included inside or in the wall of a shopping center building without changing the use category of the shopping center. However, as the ATM is free-standing it must be considered as a use which will generate some amount of its own parking demand, even if it would not increase the number of peak hour trips to or from the shopping center. The Court recognizes the security issues suggesting that it should be located in a place visible from and close to Route 7A, and that the excess parking spaces for the Western Auto building will accommodate the very brief parking associated with the nearby ATM. Accordingly, the Court has considered the ATM use as part of the amended site plan. However, under § 6.18 it must be moved beyond the 75-foot setback for front yard uses, unless it is installed on the wall of the existing Western Auto (Retail " E" ) building.

The proposed site plan shows five separate segments of frontage: three on Route 7A, one on Hicks Avenue, and one on Harmon Road. The recognizable 327-foot segment of frontage and hence ' front yard' along Route 7A is located in front of the Wal-Mart/Western Auto portion of the parking lot. Another small segment of frontage contains a triangular right of way cutting across the frontage to the gasoline station; it will otherwise be used only for pedestrian access to the site and landscaping to prevent its use as vehicular access. Another small unused segment of frontage along Route 7A is located in the northerly corner of the property, to the north of a small residential property. A 99-foot unused segment of frontage adjoins Hicks Avenue in the southwest corner of the property; this segment is shown as the possible future location of a bike path. The ' front yard' of the property along Route 7A and Hicks Avenue meets the requirements for treatment of front yards and driveways required by § 6.18, when the segments are taken together as a whole, and certainly if the Harmon Avenue frontage is also included. The proposed site plan also shows frontage along Harmon Road, which meets the requirements of § 6.18 for front yards. The property borders residential properties to the north and west. The required 10-foot buffer is reserved in the site plan adjacent to each residential property.

The site plan provides for a concrete sidewalk conveying pedestrians from the Route 7A intersection and through the center of the Price Chopper parking lot to the Price Chopper building, and a second concrete sidewalk conveying pedestrians from Route 7A along the northerly side of the gas station property to a series of pedestrian crosswalks and pedestrian islands to convey pedestrians safely across the Price Chopper parking lot to the walkway in front of the Wal-Mart building.

The existing access from the shopping center from and to Route 7A proceeded through a signalized intersection, which before the construction operated at level of service D. In addition, traffic could enter the shopping center through an existing unsignalized intersection at a service road located just to the west of the gas station which adjoins the signalized intersection. In addition, traffic entered the gas station lot and cut across to the rear of that lot to enter the shopping center property just beyond and without having to go through the signalized intersection. Both these uncontrolled access points between the shopping center and Route 7A are eliminated in the proposed site plan, creating a safer and more orderly on-site circulation pattern with the addition of the secondary access to the west onto Harmon and Morse Roads.

The differences between the conclusions of the parties' traffic experts regarding the expected volume and behavior of traffic at this intersection were primarily due to the differences in two factors: the selection of the appropriate use category for trip generation rate, and predictions regarding the use of the secondary entrance and service road by customers coming from the north and west of the project. The parties' traffic experts agreed that the Saturday peak hour volume was appropriate for analyzing a shopping center project with a supermarket. The appropriate square footage for the calculations was 165,239 square feet, that is, without including the 9,900 square feet marked as "future" in the Price Chopper building (see footnote 2 above). The Court finds that the appropriate trip generation rate to be used for these calculations is the Institute of Transportation Engineers ("ITE") rate for the use category "shopping center," as proposed by Appellee-Applicant, because the category includes shopping centers which commonly include a supermarket. The Court did not find Appellants' proposed method to be appropriate, that is, to apply the use category "supermarket" to the square footage allocated to Price Chopper, and to apply the use category "shopping center" to the remaining square footage, as that method is likely to result in an over-estimation of the traffic to be generated from a shopping center project that includes a supermarket. Further, approximately 20% of the trips to the shopping center can be expected to visit more than one of the shopping center buildings during that trip, without creating additional traffic on the surrounding roads.

Second, the Court finds Appellee-Applicant's evidence to be persuasive that some portion of the traffic traveling to and from the north and west of the project site will use the rear service road and its connection to Route 67 or Route 7A via Morse or Harmon Road during hours of peak demand on the signalized intersection. The Court finds that it is reasonable to estimate that approximately a quarter of the traffic coming from or going to the north and west will use the alternate route in periods of peak demand, as a large percentage of the users of the shopping center will be local residents who are or will become familiar with that alternate route.

Applying these assumptions, the level of service predicted for the shopping center intersection with Route 7A will remain level of service D. The 95th percentile queue lengths will allow all vehicles queuing at the intersection to pass through the intersection after waiting through no more than one cycle of the signals at the intersection, after the intersection is monitored and the signal cycles are adjusted as required by the Vermont Agency of Transportation. The pedestrian crosswalk feature to be added to the intersection if required by the Agency of Transportation can accommodate the 40 pedestrians estimated to cross Route 7A concurrently with the appropriate phase of vehicular traffic. To minimize the queue length and maximize the maneuverability of traffic exiting the shopping center onto Route 7A, the 15-foot-wide lane widths shown on revised site plan Sheet 4b (Exhibit 12) will be required. The trees shown on the site plan to be planted along the exit lane shall be placed as close as possible to the parking lot, so as to allow for the possibility of adjustments to the exit lane width that may be required in the future.

Unlike the circulation pattern denied in Appeal of Thompson & Jacobsen, Docket No. 133-7-98 Vtec (Vt. Envtl. Ct., July 28, 1998), cited in Appellants' memorandum, this site plan does not have a closed loop circulation pattern with a single access. Rather, it has a primary access through the signalized intersection onto Route 7A, and a secondary access behind the Price Chopper through the industrial park area to Route 67 via Morse or Harmon Road.

Taking all the evidence and the above findings into consideration, the vehicular and pedestrian traffic access for the property will be adequate, and will be an improvement compared to the traffic access for the property as it previously existed. The vehicular circulation on site will be adequate, with the availability of routes behind both buildings to reach the secondary access road at times of peak use of the signalized intersection. The pedestrian circulation on site will be adequate and in the new section will be a significant improvement over the pedestrian circulation as it previously existed. The parking exceeds that required by the Zoning Bylaw for this size of development and will therefore be adequate. The landscaping as designed will be adequate and will be a significant improvement over the landscaping as it previously existed (or failed to exist) in both sections of the parking lot and as the property adjoins residential properties and the street frontages.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Site Plan Approval is GRANTED as shown on Exhibit 12 (Sheet 4b), with the following additional conditions:

The 15-foot-wide lane widths shown on revised site plan Sheet 4b (Exhibit 12) are required. The trees shown on the site plan to be planted along the exit lane shall be placed as close as possible to the parking lot, so as to allow for the possibility of adjustments to the exit lane width that may be required in the future.

The ATM shall be moved beyond the 75-foot setback for front yard uses, unless it is installed on the wall of the existing Western Auto (Retail " E" ) building.

This site plan does not authorize any outdoor storage or other uses on the 235 spaces of parking area allocated to the Wal-Mart building that would impede any more than a total of 32 of the designated parking spaces from being used for parking at any given time, as 203 spaces are required to be provided for that building. Excess parking spaces allocated to the Price Chopper building, the Western Auto (Retail " E" ) building, or the ATM machine, may not be allocated to Wal-Mart to compensate for its spaces used for outdoor display. Any proposal to construct the additional 9,900 square feet of space marked as " future" in the rear of the Price Chopper building on this plan would have to be the subject of an amendment to the site plan.

Done at Barre, Vermont, this 2nd day of April, 2001.

_____
Merideth Wright
Environmental Judge

**Footnotes**

1.	The proposed site plans were revised slightly during the hearings. The final version of Sheet 4, containing the pavement markings, landscaping, and street lighting layout, was revised to show revised paving and trees in the Wal-Mart lot, to show the pedestrian crosswalks at the signalized intersection, and to show the location of an automatic teller machine (ATM) in the Wal-Mart parking lot close to the front of the lot. Appellee-Applicant provided it in two versions: Exhibit 11 (Sheet 4a) showing two 12-foot-wide exit lanes onto Route 7A, and Exhibit 12 (Sheet 4b) showing two 15-foot-wide exit lanes onto Route 7A.

2.	The inclusion of this square footage was responsible for some of the discrepancies between the assumptions of the parties' experts at trial.